UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZAO LIN LIU,<br><br>　　Plaintiff,<br><br>　　v.<br><br>CAROLYN COLVIN,  Acting<br>Commissioner of Social Security,<br><br>　　Defendant. | Case No. C14-1389RSM<br><br>ORDER ON SOCIAL SECURITY DISABILITY |

**I.　INTRODUCTION**

Plaintiff, Zao Lin Liu, brings this action pursuant to 42 U.S.C. §§ 405(g), and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits and Supplemental Security Income disability benefits, under Title II and Title XVI of the Social Security Act.  This matter has been fully briefed and, after reviewing the record in its entirety, the Court REVERSES the Commissioner's decision.

**II.　BACKGROUND**

On June 28, 2011, Plaintiff filed concurrent applications for Social Security Disability Insurance (SSDI) and Supplemental Security Income disability benefits (SSI), alleging disability commencing on September 1, 2007.  Tr. 188-203.  She later amended her onset date to June 2, 2011.  Tr. 32.  Her applications were denied initially and upon reconsideration.  Tr.

71-120. A hearing was held before Administrative Law Judge ("ALJ") M.J. Adams on December 17, 2012. Tr. 45-70. On January 25, 2013, Judge Adams issued an unfavorable decision. Tr. 27-43.

On July 15, 2014, the Appeals Council denied Ms. Liu's request for review, making the ALJ's decision the final agency decision.[1] Plaintiff timely filed this judicial action.

### III.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### IV.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

---

[1] The Council's denial appears to have been omitted from the administrative record.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 2

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V. EVALUATING DISABILITY

As the claimant, Ms. Liu bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 3

step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity" (SGA). 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the

---

[2] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R § 404.1572.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 4

claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## VI.  ALJ DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:** Ms. Liu had not engaged in substantial gainful activity since June 2, 2011, the alleged onset date. Tr. 32.

**Step two:** Ms. Liu had medical impairments that caused more than a minimal effect on her ability to perform basic work activities. Specifically, she suffered from the following "severe" impairments: anxiety disorder and depressive disorder. Tr. 32.

**Step three:** These impairments are not severe enough to meet the requirements of any listed impairment in Appendix 1, Subpart P, Regulations No. 4. Tr. 32.

**Residual Functional Capacity:** Ms. Liu had the RFC to perform a full range of work at all exertion levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work. She can make judgments on simple work-related decisions and can respond appropriately to supervision, co-workers and deal with changes all within a stable work environment. Tr. 34.

**Step four:** Ms. Liu was capable of performing her past relevant work as a minibar restocker, room service and housekeeper, and such work would not require the performance of work-related activities precluded by the claimant's RFC. Tr. 38. Therefore, she was not disabled. Tr. 39.

///

///

---

[3] 20 C.F.R. §§404.1520, 416.920.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 5

## VII.   ISSUES ON APPEAL

Plaintiff argues that the ALJ committed reversible error by failing to provide her a full and fair hearing.  Specifically, she alleges that the ALJ unreasonably limited the scope of the foreign language translator's services.  Plaintiff also challenges the ALJ's evaluation of and weight accorded to the medical opinions of examining physician Dr. Cassandra Clark, examining psychologist Dr. Wayne Dees, her treating psychiatrist Dr. Dannica Lin, and the State Agency consultants Dr. John Robinson and Dr. Richard Borton.

## VIII.   DISCUSSION

### A.  Full and Fair Hearing Opportunity

Plaintiff first argues that the ALJ committed reversible error by unreasonably limiting the scope of her interpreter's services at the hearing.  The government responds that the Plaintiff clearly understood the proceedings, as evidenced by the hearing transcript, and therefore there was no error.  The Court disagrees.

The ALJ has an affirmative "duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (ellipsis in original) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The Social Security Administration's Program Operations Manual ("POM") states that it "will provide an interpreter free of charge, to any individual requesting language assistance, or when it is evident that such assistance is necessary to ensure that the individual is not disadvantaged." *See* Social Security Administration Program Operations Manual System, DI § 23040.001(A), available at, https://secure.ssa.gov/apps10/poms.nsf/lnx/0423040001 ("POMS").

Although the POM does not have the force of law, generally a violation of the interpreter policy is viewed as a failure to provide a full and fair hearing. *See Novikov v. Astrue*, 2008 U.S. Dist. LEXIS 78062, 2008 WL 4162941, at *5 (W.D. Wash. Sept. 2, 2008) (remanding when it was clear that interpreter needed for ALJ to fully and fairly develop the record). The standard for determining whether an interpreter was needed is a practical one, often examining the following factors: (1) the claimant's self-reported language ability on the disability report form and at the hearing; (2) the claimant's apparent ability to converse at the disability hearing; and (3) whether the claimant was represented by counsel. See Novikov, 2008 U.S. Dist. LEXIS 78062, 2008 WL 4162941 (remanding where transcript of hearing made it plain that an interpreter was needed because unrepresented claimant made plainly nonsensical statements or clearly misunderstood questions). Ultimately, the question is whether the claimant, under the circumstances, was disadvantaged in the hearing by his or her language difficulties.

In order to find that an interpreter was needed based on the transcript of the hearing, the misunderstandings must rise above the normal misstatements or clarifications involved when even fluent English speakers converse. The Court acknowledges that having to ask a question twice to get a clear answer, or to ask a question in a different way does not itself suffice to show that the lack of an interpreter has disadvantaged a claimant, since introducing an interpreter does not render all communication flawless and brings its own communication challenges. Some greater problem of understanding is needed to show that an interpreter was necessary. *See, e.g, Novikov*, 2008 U.S. Dist. LEXIS 78062, 2008 WL 4162941, at *4 (finding an interpreter was necessary because, among dozens of other similar examples, when asked,

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 7

"How do you spend your time? What do you do all day?" the claimant responded, "Oh, if, if I feel myself let down, I, I console him for finding it.").

In this case, the Court finds sufficient evidence that Ms. Liu was disadvantaged in the hearing by her language difficulties. First, there is evidence that Ms. Liu does not speak fluent English. For example, when the ALJ inquired about her education, the following exchange occurred:

> Q. And you have degrees from the university?
>
> A. Yes.
>
> Q. And what was your degree in?
>
> A. I was study the medical.

Tr. 53. Likewise:

> Q. [by counsel]  How does your depression affect you?
>
> ALJ: Excuse me.  Do you know the answer to how does your depression affect you without having an interpreter interpret that for you?  Do you know what she's asking you?  Could you answer the question, then, instead of having the interpreter go through it?
>
> Clmt: Some of word I couldn't understand.
>
> ALJ: Which word do you not understand?
>
> Clmt: Could you ask me again?
>
> Q. How does your depression affect you?
>
> A. Affect me.
>
> ALJ: Affect you?
>
> Clmt: Mm-hmm.
>
> ALJ: Okay.  Interpret that please.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 8

Tr. 57.

Further, when the ALJ was not getting clear answers to his questions, he simply told Ms. Liu to "focus," or that her answers were "not relevant," or "that's not really what I'm trying to figure out here," rather than attempt to ascertain whether a language barrier was the issue. *See*, *e.g.*, Tr. 55-57.

When Ms. Liu's attorney asked Ms. Liu if she needed the interpreter's assistance with a question, the ALJ immediately interjected with a seemingly baseless limitation on the interpreter's participation:

> Q.　　　　What kinds of problems have you had being around other people? Do you need the interpreter to explain the question?
>
> ALJ:　　　Excuse me. That's the problem here. The question does not need to be explained in order to get an answer. The question should be phrased correctly. And then a verbatim –
>
> Atty:　　　Yes, your honor.
>
> ALJ:　　　-- interpretation.
>
> Atty:　　　Yes. If I could get a verbatim interpretation. I apologize. That's what I meant.
>
> ALJ:　　　Okay. Well, that's what the problem is here, and I perceive it as a difficulty with the situation of the interpreter is responding to the question. And that's not appropriate here. I want the claimant to tell me exactly what words you do not understand in a question. Then we'll interpret those words into your language that you studied in China and used until you came to the United States and studied and learned English. So we're to go through this very carefully and get a verbatim interpretation. So what is the question?

Tr. 60-61. Not only was the ALJ condescending in addressing Ms. Liu, and potentially intimidating as a result, the Court finds it nonsensical to ask a non-English speaker to parse out a single word or words she does not understand in a question when she may not know what it is

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 9

about a particular question that she does not understand, or may not realize she did not understand until reviewing her testimony in hindsight.

Even more troubling, is the ALJ's apparent reluctance to use an interpreter at all during the proceedings. In fact, from the beginning of the hearing he appeared to make efforts to pressure Ms. Liu into declining an interpreter completely:

| | | |
|---|---|---|
| ALJ: | | Good morning. |
| Clmt: | | Good morning. |
| ALJ: | | Are you – |
| Clmt: | | Zao Liu. |
| ALJ: | | Liu, yes. And you speak good English, don't you, and write good English? |
| Clmt: | | Yeah. [Inaudible] yeah. |
| ALJ: | | I don't think we need the interpreter, do you? |
| Atty: | | Your honor, she has pretty good English, but I would prefer to have interpreter here just in case she doesn't understand the entire proceedings. |
| ALJ: | | Okay. Well, the mere fact that she wasn't born in the United States doesn't negate the fact that the record supports a finding that she has good English speaking ability; good understanding of the English language; and good ability to write and read. And is also highly educated. |
| Atty: | | I realize that, your honor, but she did request that the interpreter be here to be able to make sure that she understood the entire proceeding. |
| ALJ: | | We'll provide the interpreter for that purpose, but I'm not going to have the interpreter do a verbatim translation, or verbatim interpretation, unless there is any -- if you have any difficulty understanding something -- I'm addressing the claimant at this time -- if you have any difficulty understanding anything I say in English, please raise your hand and we'll make sure it is interpreted for you. |

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 10

Tr. 47.

In her request for an appeal, Ms. Liu explained that the denial of a verbatim interpreter was harmful to her because it denied her the full opportunity to speak about her conditions and how they affected her. R. 263. Although she can communicate in English for much of her daily living, she was confused during the hearing and did not fully understand the questions. *Id.* She also felt that speaking in English limited her ability to communicate the complexities of her conditions. *Id.*

The government argues that Ms. Liu's assertions as to her comprehension of the proceedings is belied by the record – namely, by the fact that she did not seek further clarification of the proceedings during the hearing. However, the Court finds it unreasonable to expect that after being told more than once by the ALJ that she would not be receiving verbatim interpretation, she would continue to seek clarification, particularly in a situation that is inherently stressful for most claimant's.

Accordingly, on this record, the Court finds that Plaintiff was not afforded a full and fair hearing by the ALJ and remand is appropriate.

**B. The ALJ's Assessment of the Medical Evidence**

Given the Court's findings above, the Court does not reach Plaintiff's arguments regarding the analysis of, and weight given to, her examining doctors and the state's consultative experts.

### IX.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and the case is REMANDED for further administrative proceedings consistent with this Order. On remand, Ms. Liu shall be afforded an interpreter for verbatim interpretation at rehearing. Further, the

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 11

ALJ shall reevaluate the medical and other opinion evidence, Ms. Liu's RFC, her credibility and, if necessary, steps two, three, four and five of the five step sequential evaluation.

Plaintiff may choose to re-contact the treating and examining sources for updated records and other medical source statements and obtain additional medical and vocational expert testimony to present at the hearing.

DATED this 9th day of April 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE